## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

**MERICO OGBURN,**

      **Petitioner,**

v.                                                      Civil Action No.  2:18-cv-691

**MARK BOLSTER, Acting Warden,**

      **Respondent.**

### <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on *pro se* Petitioner Merico Ogburn's ("Petitioner") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("the Petition") and supporting memorandum, ECF Nos. 1-2, and the Respondent Mark Bolster, Acting Warden, Federal Correctional Complex ("FCC") Petersburg's ("Respondent") Response and Memorandum in Support of Respondent's Motion to Dismiss or for Summary Judgment ("Motion for Summary Judgment") and supporting memorandum, ECF Nos. 6-7. The matter was referred for disposition to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. For the following reasons, the undersigned **RECOMMENDS** that Respondent's Motion for Summary Judgment, ECF No. 6, be **GRANTED,** and the Petition, ECF No. 1, be **DISMISSED WITH PREJUDICE.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is serving a 139-month sentence for distribution of more than five grams of cocaine base.[1] *See* ECF No. 7, attach. 1 at 2, 14. Petitioner began his incarceration on August 2, 2010, *id.* at 4, and his projected release date is December 7, 2020, *id.*, attach. 1 at 14.

From August 24, 2010, through May 16, 2013, Petitioner was incarcerated at the United States Penitentiary in Atlanta, Georgia. *Id.*, attach. 1 at 2. From March 5, 2015, through October 30, 2015, Petitioner was incarcerated at the Federal Correctional Institution in Oakdale, California. *Id.* Beginning November 9, 2016, Petitioner was housed at FCC Petersburg.[2] *Id.*

### A. Incident Reports issued to Petitioner by the Bureau of Prisons

*1. Incident Report 2411384 (hereinafter "IR No. 1")*

On February 18, 2013, Petitioner was issued IR No. 1, which charged him with violation of Bureau of Prisons ("BOP") disciplinary code 108, "possession, manufacture, introduction, or loss of a hazardous tool, specifically a cell phone." *Id.*, attach. 1 at 8. During the investigation, after being advised of his right to remain silent, Petitioner confessed to the charge, stating "what else is there to say . . . I got caught with a phone . . . that's all to it." *Id.*, attach. 1 at 8-9.

On February 20, 2013, Petitioner appeared before the Unit Disciplinary Committee ("UDC"), who referred the matter to the Discipline Hearing Officer ("DHO"). *Id.*, attach. 1 at 9. Petitioner was given a "Notice of Discipline Hearing[.]" *Id.* The hearing was held on February 21, 2013, at which time Petitioner again admitted to the charges. *Id.* The DHO found Petitioner to have committed the prohibited act based on the following evidence: the incident report and

---

[1] Petitioner asserts that he is serving a 151-month sentence, *see* ECF No. 2 at 1; however, sentence monitoring computation data indicates that a court order modified Petitioner's sentence from 151 months to 139 months, *see* ECF No. 7, attach. 1 at 14. Further, the sentencing monitoring computation data indicates that Petitioner's sentence was imposed for "distribution[,]" *see id.*, not for "[c]onspiracy[,]" *see* ECF No. 2 at 1.

[2] The Court has not been provided with Petitioner's incarceration location during the gaps in these dates; however, the dates relevant to each of Petitioner's incident reports are included. *See* ECF No. 7, attach. 1 at 2.

investigation, a photograph of the confiscated phone, and Petitioner's own admission. *See id.*, attach 1 at 9, 66. The DHO imposed the following sanctions: (1) disallowance of twenty-seven days of good conduct time ("GCT"); (2) twenty-seven days of disciplinary segregation; (3) four months loss of visiting privileges; (4) four months loss of email privileges; and (5) loss of telephone privileges while in the Special Housing Unit. *Id.*, attach. 1 at 10, 66.

The DHO completed and signed the DHO Report on February 26, 2013. *Id.* Petitioner received a copy of the report on March 1, 2013. *Id.* The Petitioner was advised of his right to appeal within twenty calendar days of receiving the Report. *Id.* Petitioner did not file an appeal. *See id.*, attach 1 at 11. However, on March 30, 2013, Petitioner requested a copy of his DHO Report by submitting an "Inmate Request to Staff" to his DHO, stating that "[i]t ha[d] been over 30 days since the DHO hearing . . . and [Petitioner had] not receive[d] a written statement[.]" ECF No. 1, attach. 2 at 1.

*2. Incident Report 2755059 (hereinafter "IR No. 2")*

On August 28, 2015, Petitioner was issued IR No. 2, which charged him with a violation of BOP disciplinary code 113, "possession of intoxicants[.]" ECF No. 7, attach. 1 at 5. That same date, after being advised of his right to remain silent, Petitioner "denied that the homemade alcohol was his, and stated that it belonged to his cellmate." *Id.*, attach. 1 at 6.

On August 31, 2015, Petitioner appeared before the UDC, who referred the matter to the DHO. *Id.* Petitioner was given a "Notice of Discipline Hearing[.]" *Id.* Petitioner wrote a "written statement/request" dated September 8, 2015, that "requested the video surveillance be preserved [and] reviewed as it would show that [Petitioner] did not possess intoxicants."[3] ECF No. 1, attach. 4 at 1.

---

[3] Petitioner alleges that he submitted this written statement to the DHO. ECF No. 2 at 7. Respondent does not indicate that the BOP has any record of this written statement, noting that "[a]t no point in the DHO [R]eport is there any

The hearing was held on September 9, 2015, and Petitioner again denied the charges. ECF No. 7, attach. 1 at 7. No video surveillance footage was reviewed during the hearing. *See generally id.*, attach. 1 at 7, 52-54. The DHO found Petitioner committed the prohibited act after considering the following evidence: the statements of the staff member who discovered and tested the intoxicants, photographs of the bags containing the intoxicants, and Petitioner's own denial. *See id.*, attach. 1 at 7, 53. The DHO imposed the following sentence: (1) disallowance of forty-one days of GTC; (2) two months of disciplinary segregation; and (3) one year loss of telephone privileges. *Id.*, attach. 1 at 7.

The DHO completed and signed the DHO Report on September 14, 2015. *Id.*, attach. 1 at 8, 54. The Petitioner received a copy of the report on September 15, 2015. *Id.* The Petitioner was advised of his right to appeal within twenty calendar days of receiving the report. *Id.*

On September 21, 2015, Petitioner filed an administrative remedy request ("Regional Appeal") with BOP's South Central Regional Office ("Regional Office").[4] *Id.*, attach. 1 at 11, 72. On September 29, 2015, the Regional Office rejected Petitioner's Regional Appeal for illegibility. *See id.* Petitioner was also instructed to "resubmit his appeal within fifteen . . . days of the date of the rejection notice[.]" *Id.*, attach. 1 at 11.

Instead of resubmitting his appeal to the Regional Office, Petitioner submitted his appeal ("Central Appeal") to the BOP's Central Office ("Central Office") on October 6, 2015.[5] *Id.* On October 18, 2015, the Central Office rejected Petitioner's Central Appeal, advising Petitioner to "submit informal resolution and file at institution if necessary." *Id.*, attach. 1 at 72. Petitioner did

---

indication that Petitioner ever presented his 'written statement/request[,]'" ECF No. 7 at 19 (citing ECF Nos. 1-4), and claiming that the Petitioner did not "inform the DHO of a request to review video footage or present any evidence at the hearing[,]" *id.* (citing *id.*, attach. 1 at 52-54).

[4] The Regional Office does not maintain copies of rejected administrative remedy requests. *See* ECF No. 7, attach. 1 at 11. Petitioner has also not provided the Court with a copy. *See generally* ECF Nos. 1-2.

[5] The Central Office does not maintain copies of rejected administrative remedy requests. *See* ECF No. 7, attach. 1 at 12. Petitioner has also not provided the Court with a copy. *See generally* ECF Nos. 1-2.

4

not resubmit his appeal. *Id.*, attach. 1 at 12. However, on October 15, 2015, Petitioner submitted an "Inmate Request to Staff" requesting from his DHO "a written copy of [the DHO's] decision[.]" ECF No. 1, attach. 3.

### 3. Incident Report 3118828 (hereinafter "IR No. 3")

On May 1, 2018, Petitioner was issued IR No. 3, which charged him with violation of BOP disciplinary code 108, "possession, manufacture, introduction, or loss of a hazardous tool, specifically a cell phone." ECF No. 7, attach. 1 at 3. During the investigation, after being advised of his right to remain silent, Petitioner confessed to the charge, stating "I did have a cellphone and was using it. It was my phone[;] I was renting it out and I also was using it." *Id.*, attach. 1 at 3, 23.

On May 7, 2018, Petitioner appeared before the UDC, who referred the matter to the DHO. *Id.*, attach. 1 at 3-4. The hearing was held on May 31, 2018, when Petitioner again admitted to the charges. *Id.*, attach. 1 at 4, 28. The DHO found Petitioner to have committed the prohibited act based on the following evidence: the incident report and investigation, a photograph of the cell phone and confiscated items, an investigative report, TRUVIEW records detailing Petitioner's contact list, and calls made by another inmate to the confiscated cell phone. *Id.*, attach. 1 at 4, 28-29. The DHO imposed the following sanctions: (1) disallowance of forty-one days of GCT; (2) five days of disciplinary segregation; and (3) six months loss of telephone privileges. *Id.*, attach. 1 at 5, 29.

On July 7, 2018, Petitioner submitted an "Inmate Request to Staff" to his DHO "requesting a copy of the DHO Report[.]" ECF No. 1, attach. 5. The DHO completed and signed the DHO Report on November 27, 2018. ECF No. 7, attach. 1 at 5, 29. The Petitioner received a copy of

the report on March 13, 2019. *Id.* The Petitioner was advised of his right to appeal within twenty

calendar days of receiving the report. *Id.* Petitioner did not file an appeal. *See id.*, attach. 1 at 11.

## B. Instant Petition submitted by Petitioner pursuant to 28 U.S.C. § 2241

On December 28, 2018, while incarcerated in FCC Petersburg, Virginia, Petitioner filed

the instant *pro se* Petition pursuant to 28 U.S.C. § 2241. ECF No. 1 at 1. In the Petition, Petitioner

advises that he "is challenging issue(s) of his confinement at FCC Petersburg that concern[]

disciplinary proceedings that commenced with . . . [IR No. 1, IR No. 2, and IR No. 3] on [D]ue

[P]rocess grounds."[6] ECF No. 2 at 1-2. As a remedy, Petitioner requests that his GCT be reinstated

and that IR No. 1, IR No. 2, and IR No. 3 be expunged from his record. *Id.* at 8.

## C. Respondent's Motion

On April 8, 2019, Respondent filed a Motion for Summary Judgment, ECF No. 6, along

with a supporting memorandum, ECF No. 7. Petitioner did not file a response to the Respondent's

Motion, and the time for responding has expired. *See* E.D. Va. Loc. Civ. R. 7(F). Accordingly,

the Respondent's Motion for Summary Judgment, ECF No. 6, is ripe for recommended disposition.

## II. DISCUSSION

Petitioner contends that his Due Process rights under the United States Constitution have

been violated by Respondent's failure to adhere to the requirements established by the United

States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1975), ("*Wolff* Requirements"),[7] with

the following specific violations: (1) failing to review video surveillance evidence in connection

---

[6] Petitioner's supporting memorandum, ECF No. 2, appears to raise challenges beyond those identified in his Petition, ECF No. 1. As such, giving Petitioner the benefit of liberal construction, the Court will address all of the claims Petitioner appears to raise in both his Petition and supporting memorandum.

[7] Petitioner does not characterize his allegations as arising directly out of *Wolff v. McDonnell*, 418 U.S. 539 (1975), in his supporting memorandum. *See* ECF No. 2 at 6. However, Petitioner lists in his memorandum those Due Process rights that arise out of *Wolff. See id.*; *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 447 (1985) (citing *Wolff*, 418 U.S. at 454). Further, the term herein refers broadly to all Due Process rights arising out of *Wolff. See infra* § II.C.

with IR No. 2, *see* ECF No. 2 at 7-8; (2) failing to provide Petitioner with a copy of his DHO Reports for each incident report, *see id.* at 7; and (3) lacking evidence supportive of the DHO's decisions for each incident report, *see id.*

Before considering the merits of the instant § 2241 Petition, the Court must ascertain whether it has jurisdiction over Petitioner's claims. Respondent does not dispute that § 2241 is the proper vehicle for asserting this type of claim, and for the reasons explained below, the undersigned **FINDS** that the Court does have jurisdiction to consider the instant § 2241 Petition.

## A. 18 U.S.C. § 2241

Section 2241 petitions (such as the instant Petition) "generally challenge[] the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Gonzalez-Martinez v. Drew*, No. 8:11-cv-00437, 2011 WL 6982247, at *4 n.1 (D.S.C. Dec. 16, 2011) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). The relevant portion of the statute provides that "(c) The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because the purpose of a § 2241 petition for a writ of habeas corpus is "to test the legality of detention," a petition can be brought pursuant to 28 U.S.C. § 2241 "'regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him.'" *United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995) (quoting *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir. 1987), *cert. denied*, 502 U.S. 875 (1991) and citing *Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982)). Here, because the instant § 2241 Petition challenges the way in which Petitioner's disciplinary proceedings were conducted, § 2241 is the proper vehicle by which to assert his claims.

7

**B. Exhaustion and Procedural Default**

Although 28 U.S.C. § 2241 is silent regarding exhaustion, "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions." *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (citing *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981)). Exhaustion of administrative remedies "protects administrative agency authority" by granting the agency the opportunity "to correct its own mistakes with respect to the programs it administers," which discourages inmates from disregarding agency procedures; exhaustion also promotes efficiency by allowing the resolution of claims in a quicker, more economical fashion before filing in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks omitted) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). To properly exhaust administrative remedies, an inmate must comply "with an agency's deadlines and other critical procedural rules." *Id.* at 90.

The BOP has established the Administrative Remedy Procedure through which an inmate may seek review of any disciplinary proceedings. *See* 28 C.F.R. §§ 542.10, *et seq.* If an inmate is the subject of an incident report, then a DHO hearing will be held. *Id.* § 541.8. To appeal a DHO hearing, an inmate may submit a Regional Appeal within twenty calendar days of receiving the DHO Report. *Id.* § 542.15(a). If unsatisfied with the response, an inmate may also submit a Central Appeal, which is the final administrative appeal level. *Id.* Compliance with each of these procedures "define the boundaries of proper exhaustion" that an inmate must meet before submitting a habeas corpus petition under 28 U.S.C. § 2241. *Jones v. Bock*, 549 U.S. 199, 218 (2007). However, a court can excuse failure to properly exhaust "upon a showing of cause and prejudice." *McClung*, 90 F. App'x at 445 (citing *Carmona*, 243 F.3d at 634-35).

8

*1. Exhaustion of Administrative Remedies and Procedural Default for IR No. 1*

Respondent contends that Petitioner failed to exhaust his administrative remedies regarding

IR No. 1 because he failed to appeal within twenty days of receiving his respective DHO Report.

*See* ECF No. 7 at 11. The deadline for submitting an appeal is "20 calendar days following the

date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The DHO Report states

"[t]he inmate has been advised of his right to appeal this action within 20 calendar days under the

Administrative Remedy Procedure." ECF No. 7, attach. 1 at 66. Because Petitioner has failed to

submit an appeal through the Administrative Remedy Procedure, the Petitioner failed to comply

with "critical procedural rules[,]" which is necessary for proper exhaustion. *Woodford*, 548 U.S.

at 90. As such, Petitioner has failed to exhaust his administrative remedies as to IR No. 1.

Even though Petitioner has failed to exhaust his administrative remedies, the Court may

still consider the merits of a petition "upon a showing of cause and prejudice." *McClung*, 90 F.

App'x at 445 (citing *Carmona*, 243 F.3d at 634-35). Regarding cause, a petitioner must show a

"substantial reason" that "cannot be fairly attributed to him" for his failure to meet the prescribed

timeframe. *Gomez v. Lewis*, No. 1:12CV387, 2014 U.S. Dist. LEXIS 169146, at *33 (M.D.N.C.

Dec. 8, 2014) (quoting *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007)). Petitioner appears

to argue that he has not submitted appeals through the Administrative Remedy Procedure because

he did not receive his DHO Report.[8] *See* ECF No. 2 at 2. Absent a sufficient demonstration of

extraordinary circumstances, an exception to the exhaustion requirement cannot be granted for IR

No. 1. *See Timms v. Johns*, 627 F.3d 525, 533 (4th Cir. 2010). Petitioner received a copy of the

DHO Report on March 1, 2013, and Petitioner has not offered any cause or reason for his failure

to appeal at that time. *See* ECF No. 7, attach. 1 at 10, 66. Because both cause and prejudice are

---

[8] An inmate cannot appeal a DHO finding through the Administrative Remedy Procedure until after he receives a copy of the respective DHO report. *See* 28 C.F.R. § 542.15(b)(1).

necessary to excuse Petitioner's failure to properly exhaust his claims related to IR No. 1, and since Petitioner has failed to demonstrated cause, the Court need not address whether there is any prejudice. *See McClung*, 90 F. App'x at 445. As such, Petitioner's failure to properly exhaust his administrative remedies may not be excused.

Generally, "[w]hen a habeas petitioner fails to exhaust administrative remedies and, as a result, loses the opportunity to pursue them, his claims will be procedurally defaulted in a § 2241 proceeding." *Neal v. Warden of FCC-Petersburg*, No. 2:09CV406, 2010 WL 2024706, at *14 (E.D. Va. Apr. 22, 2010); *see also Carmona*, 243 F.3d at 633 (analogizing procedural default rules in state proceedings to administrative remedies in federal prison hearings); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) ("[F]ailure to satisfy the procedural rules of the Bureau's administrative process constitutes a procedural default."). However, the BOP Administrative Remedy Procedure allows for "an extension in filing time" when "the inmate demonstrates a valid reason for delay[.]" 28 C.F.R. § 542.14(b). The Court is unable to speculate on whether Petitioner may meet the requirements for such an extension. *See Neal*, 2010 WL 2024706, at *14. Therefore, although the undersigned does not specifically find that Petitioner's claims regarding IR No. 1 have been procedurally defaulted, the undersigned **FINDS** that Petitioner has failed to properly exhaust his administrative remedies for IR No. 1.

   *2. Exhaustion of Administrative Remedies and Procedural Default for IR No. 2.*

   Respondent contends that Petitioner failed to exhaust his administrative remedies regarding IR No. 2 because (1) Petitioner "failed to comply with the filing requirements" when submitting his Regional Appeal, which resulted in its rejection; and (2) Petitioner submitted his Central Appeal to the Central Office instead of resubmitting a corrected Regional Appeal to the Regional Office, which also resulted in its rejection. *See* ECF No. 7 at 12. "Despite these rejection notices

and instructions to resubmit his appeals, Petitioner failed to submit a properly filed appeal to the Regional Director and thus, did not receive a decision that could be appealed to the General Counsel[.]" *Id.* at 12-13. Each of these instructions constitute "critical procedural rules" and are necessary for proper exhaustion. *Woodford*, 548 U.S. at 90. As such, Petitioner has failed to exhaust his administrative remedies as to IR No. 2.

Even though Petitioner has failed to exhaust his administrative remedies, the Court may still consider the merits of a petition "upon a showing of cause and prejudice." *McClung*, 90 F. App'x at 445 (citing *Carmona*, 243 F.3d at 634-35). Regarding cause, a petitioner must show a "substantial reason" that "cannot be fairly attributed to him" for his failure to follow the prescribed process. *Gomez*, 2014 U.S. Dist. LEXIS 169146, at *33 (quoting *Hartman*, 492 F.3d at 358). Petitioner does not provide an explanation for why he failed to resubmit his Regional Appeal correctly. Absent a sufficient demonstration of extraordinary circumstances, an exception to the exhaustion requirement cannot be granted for IR No. 2. *See Timms*, 627 F.3d at 533. Because both cause and prejudice are necessary to excuse Petitioner's failure to properly exhaust his claims related to IR No. 1, and since Petitioner has failed to demonstrated cause, the Court need not address whether there is any prejudice. *See McClung*, 90 F. App'x at 445. As such, Petitioner's failure to properly exhaust his administrative remedies may not be excused.

Generally, "[w]hen a habeas petitioner fails to exhaust administrative remedies and, as a result, loses the opportunity to pursue them, his claims will be procedurally defaulted in a § 2241 proceeding." *Neal*, 2010 WL 2024706, at *14; *see also Carmona*, 243 F.3d at 633 (analogizing procedural default rules in state proceedings to administrative remedies in federal prison hearings); *Moscato*, 98 F.3d at 760 ("[F]ailure to satisfy the procedural rules of the Bureau's administrative process [by filing an untimely appeal] constitutes a procedural default."). However, the BOP

11

Administrative Remedy Procedure allows for "an extension in filing time" when "the inmate demonstrates a valid reason for delay[.]" 28 C.F.R. § 542.14(b). The Court is unable to speculate on whether Petitioner may meet the requirements for such an extension. *See Neal*, 2010 WL 2024706, at \*14. Therefore, although the undersigned does not specifically find that Petitioner's claims regarding IR No. 2 have been procedurally defaulted, the undersigned **FINDS** that Petitioner has failed to properly exhaust his administrative remedies for IR No. 2.

### 3. Exhaustion of Administrative Remedies and Procedural Default for IR No. 3

In his Petition, Petitioner admits that he failed to Petitioner failed to comply with "critical procedural rules[,]" which is necessary for proper exhaustion because he had not yet received the DHO Report. *See* ECF No. 2 at 5; *Woodford*, 548 U.S. at 90. Respondent indicated that Petitioner was not provided the DHO Report until March 13, 2019, almost four months after Petitioner filed this action. ECF No. 7 at 5; ECF No. 7, attach. 1 at 5, 29. As such, at the time Petitioner filed the Petition, he could not have exhausted his administrative remedies. Subsequently, however, on March 13, 2019, Petitioner received a copy of the DHO Report and was advised of his right to file an administrative appeal within twenty days of receiving the DHO Report. ECF No. 7, attach. 1 at 29. However, as of April 4, 2019, a date more than twenty days from March 13, 2019, the BOP had no record of Petitioner submitting an appeal. *Id.*, attach. 1 at 12. Petitioner did not respond to Respondent's dipositive Motion, and thus did not contest that he failed to appeal. Because Petitioner has failed to submit an appeal through the Administrative Remedy Procedure, the Petitioner failed to comply with "critical procedural rules[,]" which is necessary for proper exhaustion. *Woodford*, 548 U.S. at 90. As such, Petitioner has failed to exhaust his administrative remedies as to IR No. 3.

Even though Petitioner has failed to exhaust his administrative remedies, the Court may still consider the merits of a petition "upon a showing of cause and prejudice." *McClung*, 90 F. App'x at 445 (citing *Carmona*, 243 F.3d at 634-35). Regarding cause, a petitioner must show a "substantial reason" that "cannot be fairly attributed to him" for his failure to meet the prescribed timeframe. *Gomez*, 2014 U.S. Dist. LEXIS 169146, at *33 (quoting *Hartman*, 492 F.3d at 358). Petitioner did not respond to Respondent's Motion for Summary Judgment and similarly did not provide any reason or cause for Petitioner's failure to timely file an appeal once he received the DHO Report. Because both cause and prejudice are necessary to excuse Petitioner's failure to properly exhaust his claims related to IR No. 1, and since Petitioner has failed to demonstrated cause, the Court need not address whether there is any prejudice. *See McClung*, 90 F. App'x at 445. As such, Petitioner's failure to properly exhaust his administrative remedies may not be excused.

Generally, "[w]hen a habeas petitioner fails to exhaust administrative remedies and, as a result, loses the opportunity to pursue them, his claims will be procedurally defaulted in a § 2241 proceeding." *Neal*, 2010 WL 2024706, at *14; *see also Carmona*, 243 F.3d at 633 (analogizing procedural default rules in state proceedings to administrative remedies in federal prison hearings); *Moscato*, 98 F.3d at 760 ("[F]ailure to satisfy the procedural rules of the Bureau's administrative process [by filing an untimely appeal] constitutes a procedural default."). However, the BOP Administrative Remedy Procedure allows for "an extension in filing time" when "the inmate demonstrates a valid reason for delay[.]" 28 C.F.R. § 542.14(b). The Court is unable to speculate on whether Petitioner may meet the requirements for such an extension. *See Neal*, 2010 WL 2024706, at *14. Therefore, while the undersigned does not specifically find that Petitioner's

claims regarding IR No. 3 have been procedurally defaulted, the undersigned **FINDS** that Petitioner has failed to properly exhaust his administrative remedies for IR No. 3.

## C. Merits of Petitioner's Claim

Although the Court finds that Petitioner has failed to properly exhaust his administrative remedies, because the Court cannot speculate whether Petitioner may meet the requirements for an extension of time to file an administrative appeal pursuant to 28 C.F.R. § 542.14(b), the Court cannot determine whether Petitioner's claims are procedurally defaulted. Therefore, the Court shall proceed to the merits of Petitioner's claims.

Petitioner contends that his Due Process rights under the United States Constitution have been violated by the Respondent's failure to adhere to the *Wolff* Requirements, with the following specific violations: (1) failing to review video surveillance evidence in connection with IR No. 2, *see* ECF No. 2 at 7-8; (2) failing to provide Petitioner with a copy of his DHO Reports for each incident report, *see id.* at 7; and (3) lacking evidence supportive of the DHO's decisions for each incident report, *see id.*

The *Wolff* Requirements apply when a prisoner's DHO hearing proceedings might result in the loss of GTC:

> Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, (4) "revocation of [GTC] does not comport with 'the minimum requirements of procedural [D]ue [P]rocess,' [*Wolff*, 418 U.S.] at 558, unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* Lastly, (5) the decision-maker must be

14

"impartial" in a disciplinary hearing. *See Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011) (citing *Wolff*, 418 U.S. 539; *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)).  As IR No. 1, IR No. 2, and IR No. 3 each resulted in the loss of GTC, Respondent was required to satisfy all five *Wolff* Requirements in Petitioner's DHO hearings.[9]

### 1. Provision of Advance Written Notice

A petitioner must receive advance written notice of any charges pending against him. *See Hill*, 472 U.S. at 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).  At minimum, an inmate must receive twenty-four hours to plan his defense. *See Sweeney v. Parke*, 113 F.3d 716, 719 (7th Cir. 1997) (citing *Wolff*, 418 U.S. at 564).  Petitioner received notice of IR No. 1, IR No. 2, and IR No. 3 at least twenty-four hours in advance of each respective hearing. *See* ECF No. 7, attach. 1 at 27, 51, 64.  Therefore, Petitioner's Due Process rights regarding the first *Wolff* Requirement have been observed.

### 2. Opportunity to Call Witnesses and Present Documentary Evidence

Provided that it is "consistent with institutional safety and correctional goals[,]" a petitioner must have the "opportunity . . . to call witnesses and present documentary evidence[.]" *Hill*, 472 U.S. at 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).  In Petitioner's "Notice of Discipline Hearing" for IR No. 1, IR No. 2, and IR No. 3, Petitioner was advised of his right to present evidence and witnesses, and he was offered the opportunity to list witnesses. *See* ECF No. 7, attach. 1 at 27, 51, 64.  Petitioner declined this opportunity. *See id.*  Therefore, because Petitioner was provided with an opportunity to present witnesses and documentary evidence, his Due Process rights were observed regarding the second *Wolff* Requirement.

---

[9] *See supra* note 7.

However, in addition to Petitioner's general claim regarding his opportunity to present witnesses and documentary evidence, Petitioner has also advanced the specific claim that the DHO failed to accept his request for video surveillance and to review that evidence. *See* ECF No. 2 at 7-8 ("[P]etitioner did make his request for the DHO to review video surveillance and he did not act on [P]etitioner's request[.]"). Petitioner has provided the Court with a copy of his written request to review video surveillance. *See* ECF No. 1, attach. 4. The DHO is required to review all evidence requested by Petitioner and to "make [the requested] evidence available or furnish an explanation of the reasons for the denial." *Saunders v. Grondolsky*, No. 12-10484-RWZ, 2013 U.S. Dist. LEXIS 68329, at *9 (D. Mass. May 14, 2013) (citing *Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390, 1401 (1st Cir. 1991)). A DHO cannot simply refuse to examine evidence without violating that inmate's right to Due Process:

> [A]n inmate's right to procedural [D]ue [P]rocess is violated when a hearing examiner simply fails to view available evidence to determine its relevance and suitability for use at a disciplinary hearing. If such hearings are to have any substance, the hearing officer must independently assess whether the evidence is relevant and then determine whether there are legitimate penological reasons to deny the prisoner access to the evidence requested.

*Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 174 (3d Cir. 2011).

Nothing in the record indicates that the DHO reviewed or considered video surveillance regarding IR No. 2 during Petitioner's DHO hearing. *See generally* ECF No. 7. Respondent appears to argue that the DHO did not review such evidence because Petitioner allegedly did not actually submit his request. *See id.* at 19 ("At no point in the DHO [R]eport is there any indication that Petitioner ever presented his 'written statement/request[,]' [*id.* at 19 (citing ECF Nos. 1-4)], nor did he inform the DHO of a request to review video footage or present any evidence at the hearing[,]' [*id.* (citing *id.*, attach. 1 at 52-54)]."). Respondent further argues that prior to the

hearing, "Petitioner explicitly declined" to present documentary evidence.[10] *See id.* at 18. At the hearing itself, Respondent contends that "Petitioner did not raise any issues concerning the discipline process to that point[.]" *Id.* at 19. When "provided with an opportunity to make a statement" during the hearing, Petitioner only "den[ied] knowledge of the intoxicants." *Id.*

Courts have relied upon DHO Reports to record what occurred during disciplinary proceedings. *See Laor v. Fed. Bureau of Prisons*, No. 08-3532, 2009 U.S. Dist. LEXIS 41706, at *18 (D.N.J. May 15, 2009) ("While he claims that his requests for documents w[ere] ignored, there is no indication in the DHO Report that he made any specific request for documents that w[as] denied."); *see also Briggs v. Quintana*, No. 5:13-330-KSF, 2014 U.S. Dist. LEXIS 10828, at *11-12 (E.D. Ky. Jan. 29, 2014) ("The DHO did not state in [the DHO Report] . . . that [the inmate] had requested to introduce other documentary evidence which would prove [the inmate's innocence] . . . or that he (the DHO) had denied such a request from [the inmate].")  Therefore, the DHO Report's silence regarding Petitioner's request supports an inference that the request was not made part of the disciplinary proceedings. *See* ECF No. 7, attach. 1 at 52-54.

Further, had Petitioner actually made such a request, Petitioner failed to follow up on that request for documentary evidence. *See Briggs*, 2014 U.S. Dist. LEXIS 10828, at *11. In *Briggs v. Quintana*, the court discussed the following:

> Given that [the inmate] had requested certain documentary information . . . from prison staff one month before his hearing, [the inmate] could have and should have requested a staff member to represent him to pursue this issue, if he believed that it was relevant to the charges filed against him.  It appears that at his disciplinary hearing, [the inmate] did not follow-up on his . . . 'Inmate Request to Staff' seeking documents[.]

---

[10] In arguing that Petitioner explicitly declined to present documentary evidence, Respondent cites Petitioner's "Notice of Discipline Hearing[.]" *See id.* at 18 (citing *id.*, attach. 1 at 51). In this Notice, Petitioner was informed that he would "have the right to call witnesses at the hearing and to present documentary evidence[.]" *Id.*, attach. 1 at 51. However, the Notice only required Petitioner to answer whether he wanted "to have witnesses." *Id.* Therefore, the actual response solicited from Petitioner does not mirror the disclosure.

*Id.* Further, the court found it persuasive in *Howard v. United States* when the inmate, "clearly expect[ing] [that the videotape] would bolster his argument[,]" requested "consistently" that videotape be shown. 487 F.3d 808, 813 (10th Cir. 2007). In the instant case, the only evidence that Petitioner has submitted regarding his request is his written statement of September 8, 2017. *See* ECF No. 1, attach. 4. Other than this alleged statement, there exists no evidence Petitioner ever requested the video surveillance and Petitioner's silence on this issue is reflected in his signed "Notice of Discipline Hearing[.]"[11] *See* ECF No. 7, attach. 1 at 51. Petitioner further failed to follow up on the request during the hearing, *see id.*, attach. 1 at 52-54, and omitted any mention of the video surveillance in his "Inmate Request to Staff" that Petitioner submitted after the hearing, *see* ECF No. 1, attach. 3. Therefore, Petitioner's failure to request review of the video surveillance during the hearing—or at any point thereafter until the instant Petition—significantly undermines his claim that he was prevented from submitting documentary evidence.

Lastly, even assuming that Petitioner did submit a request the day before his hearing for video surveillance, *see id.*, attach. 4, the DHO would not have violated Due Process by refusing to review it at such a late date.[12] *See Teoume-Lessane v. Bolyard*, No. 5:07CV159, 2008 U.S. Dist. LEXIS 70599, at *11 (N.D. W. Va. Sept. 17, 2008). In *Teoume-Lessane*, the court discussed facts sufficiently analogous to the instant case:

> [T]he petitioner had ample time to identify witnesses and collect relevant documents between first learning of the charge in the incident report on May 18, 2006, and the date of the disciplinary hearing on May 31, 2006. However, . . . the petitioner waited until two days before the hearing to submit a list of evidence he

[11] *See supra* note 10. Furthermore, Petitioner did not actually say that he did, in fact, submit his written request, but rather states that at the DHO hearing he "then attempted to produce the written statement/request for the DHO to consider documentary evidence." ECF No. 2 at 3. Petitioner did not explain how he attempted to do this and what, if anything, prevented him from submitting the request. Additionally, an inmate's failure to indicate that he intends to present documentary evidence does not constitute a waiver of his right to present documentary evidence. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 n.2 (7th Cir. 1992).

[12] This gives Petitioner the benefit of the date on the request, but even Petitioner admits that he did not attempt to submit the request until the DHO hearing. *See* ECF No. 2 at 3.

18

wanted to present. On these facts, this Court concludes that the petitioner was not denied the right to call any witnesses or present any evidence.

*Id.* In *Teoume-Lessane*, the petitioner was given thirteen days to prepare for his DHO hearing. *See id.* In the instant case, Petitioner was given twelve days to prepare for his hearing—having received his incident report on August 28, 2015, *see* ECF No. 7, attach. 1 at 5, with a hearing date of September 9, 2015, *see id.*, attach. 1 at 7—and even assuming he actually submitted it on the date indicated on the request, he waited until the day before his hearing to write his request, *see* ECF No. 1, attach. 4. Such a request is therefore untimely. *See Teoume-Lessane*, 2008 U.S. Dist. LEXIS 70599, at *11; *cf. Miller v. Duckworth*, 963 F.2d 1002, 1004 n.2 (7th Cir. 1992) ("[T]he prisoner certainly cannot wait until the day of the hearing to make such requests[.]"). Furthermore, prior to his DHO hearing, Petitioner had multiple interactions with BOP employees during which he did not request the video surveillance, including Petitioner's receipt of the incident report and his UDC hearing. *See* ECF No. 7 at 6. When an inmate delays making a request for evidence despite multiple opportunities to do so, that inmate's Due Process rights are not violated. *See Chestnut v. Ebbert*, No. 3:CV-15-1581, 2016 U.S. Dist. LEXIS 122889, at *34-35 (M.D. Pa. Sept. 12, 2016) (holding that when an inmate failed to request video surveillance during two investigating interviews, and instead waited until his hearing, the BOP's failure to satisfy his belated request did not violate his Due Process rights).

Therefore, given the DHO Report's silence regarding the request, Petitioner's failure to follow up on his alleged request, and the untimeliness of his request, the DHO's failure to review the video surveillance does not constitute a Due Process violation.

### 3. Written Statement by Factfinder

Petitioner contends that the DHO failed to provide him with his DHO Reports in violation of the Due Process Clause of the United States Constitution. *See* ECF No. 2 at 7. Petitioner does

19

have a constitutional right to receive a copy of his DHO Reports, *see Wolff*, 418 U.S. at 564-65, but Petitioner did ultimately receive a copy of his DHO Reports for IR No. 1, IR No. 2, and IR No. 3, *see* ECF No. 7, attach. 1 at 5, 8, 10. Therefore, Petitioner's claims on this issue are moot. *See Shahan v. Ormond*, No. 3:18cv200, 2018 WL 6681210, at *11 (E.D. Va. Dec. 19, 2018) ("[W]ith respect to [the inmate's] claim that he did not receive the DHO Report, such a claim is moot because after filing this action, [the inmate] received the DHO Report.").

Furthermore, 28 C.F.R. § 241.8 does not provide a specific timeframe within which the DHO must provide the DHO Report following a DHO hearing. *See* 28 C.F.R. § 541.8(h); *see also Reid v. Mansukhani*, No. 5:16-cv-3280-RMG, 2017 U.S. Dist. LEXIS 84155, at *6-7 (D.S.C. June 1, 2017), *aff'd*, 697 F. App'x 154 (4th Cir. 2017); *Bauer v. Warden*, No. 6:16-cv-304-RMG, 2017 WL 318683, at *5 (D.S.C. Jan. 23, 2017) (citing *Riley v. Drew*, No. 4:12-1894-RMG, 2013 U.S. Dist. LEXIS 73969, at *5 (D.S.C. May 23, 2013) and finding that receiving a DHO Report outside of the fifteen-day period outlined in BOP policies "do[es] not amount to a [D]ue [P]rocess violation"). Therefore, even if the Court were to consider the merits of Petitioner's claims, and further were to construe Petitioner's claims to include the delay in receiving his DHO Reports, Petitioner has not suffered a Due Process violation regarding the third *Wolff* Requirement.

### 4. Lack of Evidence to Support DHO's Decisions

Petitioner also contends that there is no evidence to support the DHO's decisions for IR No. 1, IR No. 2, and IR No. 3. *See* ECF No. 2 at 7. Petitioner claims that if there had been evidence, then "he would have simply received written statements by the factfinder of the evidence relied on and the reasons for the sanctions." *Id.*

In order to satisfy Due Process, the fact-finder's decision "must be supported by *some* evidence." *Hill*, 472 U.S. at 447 (emphasis added). Furthermore, the evidentiary requirement in this context is not stringent:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that *could* support the conclusion reached by the disciplinary board. *See* [*United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)]; *United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-134 (1924); *Willis v. Ciccone*, 506 F.2d 1011, 1018 ([8th Cir.] 1974). We decline to adopt a more stringent evidentiary standard as a constitutional requirement.

*Id.* at 455-56. Therefore, Due Process is satisfied if the DHO cited "sufficient evidence[.]" *See id.* at 447.

### a. Evidence for IR No. 1

The DHO Report for IR No. 1 did contain evidence that could support Petitioner's conviction, including a photograph of the item and Petitioner's own admission of guilt. *See* ECF No. 7, attach. 1 at 66. Because of this evidence, "the DHO found the greater weight of the evidence . . . [supported] the finding of the DHO that [Petitioner] committed the prohibited act as charged." *Id.* Therefore, Petitioner has not suffered a Due Process violation for lack of evidence regarding IR No. 1. *See Hill*, 472 U.S. at 455-56.

### b. Evidence for IR No. 2

The DHO Report for IR No. 2 did contain evidence that could support Petitioner's conviction, including the reporting staff member's recovery of the intoxicants, the staff member's certification that the intoxicants were in Petitioner's possession, the odor of the intoxicants, and "[t]he test results indicat[ing] a positive reading of 0.040 for intoxicants." ECF No. 7, attach. 1 at 53. Because of this evidence, "the DHO . . . f[ound] [Petitioner] committed the prohibited act of

possession of intoxicants." *Id.* Therefore, Petitioner has not suffered a Due Process violation for lack of evidence regarding IR No. 2. *See Hill*, 472 U.S. at 455-56.

### c. Evidence for IR No. 3

The DHO Report for IR No. 3 did contain evidence that could support Petitioner's conviction, including an incident report provided by an SIS technician and Petitioner's own admission of guilt. *See* ECF No. 7, attach. 1 at 29. "Because the evidence presented showed that [Petitioner] did in fact possess a cellphone, the DHO concluded that the charge against [Petitioner] . . . was appropriate and warranted." *Id.* Therefore, Petitioner has not suffered a Due Process violation for lack of evidence regarding IR No. 3. *See Hill*, 472 U.S. at 455-56.

### 5. *Opportunity to be Heard by an Impartial Decision-Maker*

Petitioner has alleged that he was not granted "the opportunity to be heard before an impartial decision-maker[.]" ECF No. 2 at 6. However, the regulations define the DHO as "an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). Further, Petitioner has not proffered any evidence that any of his DHOs were involved in the respective incidents in any way other than in their roles as DHOs. *See generally* ECF Nos. 1-2. Therefore, Petitioner has not suffered a Due Process violation for lack of opportunity to be heard before an impartial decision-maker.

### III. RECOMMENDATION

In conclusion, while Petitioner properly invoked § 2241 as the vehicle to challenge the timing in which he received the DHO written decision, as detailed herein, the undersigned **FINDS** that Petitioner has failed to properly exhaust his administrative remedies with respect to IR No. 1, IR No. 2, and IR No. 3. The undersigned further **FINDS** that Petitioner's claim that he did not

receive his DHO Reports related to IR No. 1, IR No. 2, and IR No. 3 is moot and that the remainder of Petitioner's claims lack merit.

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's Motion for Summary Judgment, ECF No. 6, be **GRANTED** and the Petition, ECF No. 1, be **DENIED AND DISMISSED WITH PREJUDICE.**

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge will make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to *pro se* Petitioner and counsel of record for the Respondent.

/s/

Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 12, 2019

24